We next have the United States v. Jimenez, S. 24-1661. Thank you so much. Good morning. May it please the court, Sarah Baumgartel of the Federal Defenders on behalf of William Jimenez. A remand from this court is not supposed to be an empty formality where the outcome is predetermined. But that's what happened in Mr. Jimenez's case. Following appeal, this court vacated several special conditions of supervised release that were imposed on Mr. Jimenez and remanded to the district court. In the remand proceeding, the district court reimposed the same conditions. And while the court did give additional reasons for imposing the conditions, those reasons still are not sufficient to justify the conditions. And the court declined to address problems that this court had identified with those conditions on the prior appeal. So we're talking about special conditions requiring Mr. Jimenez to complete 20 hours of community service for every week that he's not working, an electronic search condition, and a mental health condition. So I just want to clarify, you're no longer challenging the employment condition. Is that correct? That's correct. On the prior appeal, the court upheld the employment condition. So I can start with community service just because that relates to it. And the issue here is twofold. First, there's no justification for any community service obligation. And second, the requirement that the court imposed is excessive, punitive. And as this court recognized in Perkins, it exceeds the guidelines recommendation for 400 hours of community service over the term of supervised release. So is this a substantive reasonableness challenge to that condition? Well, it's both. It's both that there's an insufficient basis to impose it. Those arguments sound like a substantive challenge to whether this is an appropriate element of his sentence. We're certainly challenging if it's an appropriate element, yes. And to the government's ripeness point, these are legal challenges. And so our argument with respect to community service would be that the law of the case determines that this issue is ripe on the prior appeal. The government argued that this was not right. The court substantively decided the condition and vacated it. So we would argue the court has already rejected that. The problem with this work, the government likes to link the conditions together. And the issue is that what will happen is that there's no outer bounds set by the district court, regardless of the fact that this court had essentially advised the district court to do that. And it's really left to the full discretion of the probation officer to determine when this condition kicks in and ultimately how many hours Mr. Jimenez is going to be required to serve. And in that way, it's not a mere administrative detail of its sentence. It's the very substance of the sentence that he's serving on supervised release. So would one solution be to ask the district court to impose a ceiling? That would be better. We would still object to the, but that is essentially what the court did last time. I mean, the court last time, and it wasn't phrased as a directive, but it suggested that the court delineate the outer bounds of the condition. And the district court simply refused. We would also argue that there should not be any community service requirement. And again, the only justification that the court gave for this was to incentivize Mr. Jimenez to work, because she didn't want him hanging around doing nothing. But isn't hanging around and not being idle to prevent recidivism, right? I mean, isn't that issue? And I mean, the question about how tightly fitted it is, but we're talking about an abuse of discretion, right? Well, there are two separate special conditions requiring Mr. Jimenez to work. There's the standard work condition, and then the court imposed another work requirement. And what the court hasn't explained is why those two legal mandates are not sufficient to incentivize Mr. Jimenez to work. And I just want to point out that the problem here is that what the court has essentially done is the court has built in the sanction that can be imposed at the probation officer's discretion. And so in the ordinary course, if someone had a standard work condition and there was an allegation that they weren't working, what would happen is that individual would be entitled to some process. They would have a hearing before the court. They would have a lawyer appointed to represent them. And we could have a proceeding where we determined if they had, in fact, not been making a good faith effort to find employment. Instead, the way this is structured is there will be no process for Mr. Jimenez. If the probation officer determines that he's not working and not making a good faith effort, then they can impose the sanction themselves. I'd also like to discuss the electronic monitoring condition. Just briefly, this court has been very careful to There's a question about that. There is this search condition that you talked about and then a mental health treatment condition. My understanding, and don't tell me it's a misunderstanding, my understanding is that there are cases that have been submitted to this court already that touch on both of those issues. I would assume, if that's true, we might very well put this, as we say, in a queue and wait for our colleagues to decide those other cases that deal with these other conditions. Does that make sense? So with respect to, I mean, these are certainly conditions that we litigate. I think that the legality of imposing the condition is incredibly fact-specific. And so I think it would make sense to decide Mr. Jimenez's case based on his record and his facts. This court has, I think recently in United States v. Meadows, there was a decision this month invalidated a similar electronic search condition with someone who had the same prior, who had the same offensive conviction as Mr. Jimenez and a very similar record. Here, the court's basis for imposing the condition was that he had, first off, the court said it was customary, which is not an individualized basis to impose the condition. And so that's not a proper basis. And second, the court said that essentially, if he were to deal drugs in the future, it would reveal evidence of that drug dealing. But this court has rejected this sort of invasive electronic search condition, even for individuals, as in United States v. Meadows, who do have some record of drug dealing. And so that's not a sufficient basis under this court's decisions. With respect to the mental health treatment, yes, there are other cases where we challenged it. And again, we would just argue that it's highly fact specific. And I understand that this condition is well-intentioned, but it is not appropriate and it is excessively vague on the individual facts of this case, given Mr. Jimenez's background, and given the fact that he's going to be participating in substance abuse treatment. The final point is we have also requested a remand for resentencing. And so I'd be happy to address any questions about that. But our contention is that at the resentencing, the district court misapprehended the scope of its own authority to resentence Mr. Jimenez based on an intervening change in controlling law. And so we would ask for a remand to the court just to consider, with a proper understanding of its own discretion, whether it would adjust his patents. So I have some more questions about the improper delegation argument. I generally understand improper delegation in which there is an opportunity for probation to choose between more and less onerous conditions. In this case, it would just be the opportunity to excuse him, right? So can you explain to me why that is in line with the other cases in which we have found improper delegation? Because here, probation gets to determine when the community service obligation starts. So the community service obligation kicks in when Mr. Jimenez is unemployed and not making good faith efforts to find employment, as determined by the probation department. And so there was a colloquy about this at the resentencing, where the district judge said, there will come a time in probation's discretion when they determine that you are not compliant. I think she said in probation's judgment, when they determine that you are no longer in compliance with the condition. And that's when the obligation will kick in. And so if there were no community service commitment or condition, at that moment when that point of discretion or judgment occurs, the alternative would be that there would be a violation notice sent to the judge, right? Yes. So it's not that probation's. So the problem with it is not that probation is exercising judgment, because they do that all the time. The problem is that probation's exercise of judgment is to trigger a new or the activation of a condition. It's different, because they are exercising judgment about when they believe genuine or sincere efforts have stopped. That's right. That's right. And that's exactly right, Your Honor. Because what happens is then there's not a mechanism for him, essentially, for Mr. Jimenez to challenge that in the same way. Because the court's not involved at that point. Yes, the court's not involved. And more for Mr. Jimenez is he doesn't have the right to have a lawyer present to help him contest that, to try to help him prove up the efforts that he's been making to find employment or to otherwise explain why this has been happening and why a sanction shouldn't be imposed. Thank you. Can I ask one more question?  Can I ask one more question? On the reasonable suspicion, I'm looking at the judges on the re-sensing transcript. And it's interesting, because I'm not sure if it was you. I think it was you. Your primary argument was, or one of your key arguments was, look, there's a difference between reasonable suspicion of a violation of conditions and reasonable suspicion of a new crime. And the judge rejected that. But then in the description of the details of the condition does say, in this case, if the defendant returns to drug dealing or other unlawful conduct, there may be reasonable suspicion that evidence of that behavior can be found on some electronic device. Throughout, the judge does say violation of the law or the conditions. But that's sort of what you were asking for, right? But that's not what's reflected in the actual written judgment.  And is there enough there that that conflicts with the written judgment? Yes. So I should take that back. I think that the court's rationale for imposing it was to reveal evidence of new criminal activity. But the judgment is broader than that. Right. OK. Thank you. Good morning, Your Honors. May it please the Court, Jacob Fiddleman for the United States. This court should affirm in all respects. After remand, Judge Coate conducted a proceeding where she carefully considered each special condition. She engaged in an individualized assessment. And she explained her reasons for each condition she imposed. She also changed several of the conditions in meaningful ways based on warnings or concerns expressed by this court in the first summary order, which, as a matter of a holding, vacated and remanded for the lack of an explanation. There was no abuse of discretion in any aspect of Judge Coate's ruling. First, with respect to the search condition, a search condition need not be related only to the offense conduct. Special conditions are to be affirmed if there's no abuse of discretion in the district judge's determination that it was reasonably related to any one of the permissible 3553A factors listed in 5D1.3b, which include the need to protect the public, the need to deter recidivism, and the need to promote rehabilitation. And Judge Coate explained here that based on Jimenez's criminal history, which involved multiple robberies, multiple drug convictions, and his conduct in this case, which is not simply a violation of 922G1, but rather is a whole constellation of facts, including making sales of drugs to an undercover officer arranged via cell phone. One of the things that I think is challenging is that this condition isn't just allowing for searches of unlawful conduct. It's a violation of a condition of supervision. So that seems to me that it could be roving into looking at whether or not he missed a session of his mental health treatment or missed his target hours for community service and the like. And I'm wondering why that is not broader than some of the other conditions that we've seen. So in fact, Your Honor, that language is, and this is what Judge Coate was referring to when she used the word customary, was the form of the condition when it is imposed. This language is the standard form language that is used when a search condition is imposed. And if the court were to look back at the appendices of all of the cases in which these conditions are affirmed, this language appears. The narrow tailoring requirement this court has held is satisfied by the reasonable suspicion requirement and the requirement that any search be conducted in a reasonable manner. And those requirements do a lot of work. In United States v. Lamaca, this court approved of more than just criminal violations, but rather suspicion of unlawful conduct more broadly. And that includes violations of the terms of supervised release, which is unlawful to disregard a court order. And this court in Olivares and Lewis have squarely held that the reasonable suspicion requirement is what renders this narrowly tailored. There's nothing unusual about authorizing searches to find evidence of violations of the conditions. The last thing I'll note on the search condition is that this court has routinely affirmed this precise rationale for an electronic search condition, namely, that it is reasonably related, or that there is no abuse of discretion in a finding, that it is reasonably related to deterring and detecting recidivism where someone has a history of concerning criminal conduct. That's the Washington case, Thomas, Edinger, Ortiz. All of those summary orders would be rendered incorrectly decided by a holding here that Judge Coates' reasoning was insufficient. And so the reasoning is that it's based on the defendant's personal history of recidivism here, as opposed to the nature of the offense? Both, Your Honor. OK, so the nature of the offense, the judge references it. She says, the defendant shot someone in the knee. He's engaged in violence. OK, that doesn't seem to naturally relate to the cell phone. And so where is the analysis that says this is about protecting the stopping? It says the words, the probation officer has a responsibility to keep the community safe. But I'm unclear. So she describes it in pages 125 to 127. She describes it, if the defendant returns to drug dealing or other unlawful conduct, there could be reasonable suspicion. The probation officer has a responsibility. So what the defendant asked for is, if the defendant returns to drug dealing or unlawful conduct. I don't think so, Your Honor, because a violation of the conditions is unlawful conduct. OK. And Ettinger, excuse me, and the Lamica case makes clear that unlawful and criminal are not. So is there any case in which a search of a defendant's, of all of defendant's electronic devices, would not be warranted? Is that, it sounds like you're saying, look, this is someone who has committed a crime. We have an obligation to protect the community. And so we're going to check their phone. Well, but it's based on two responses to that, Your Honor. The first one is that it's based on the individual totality of the facts and circumstances. If you had a first-time offender who had engaged in, let's say, a simple assault of a postal worker or something, you might not have a basis to conclude that serious concerns regarding recidivism, deterring recidivism, and detecting recidivism warranted this invasion of privacy. So recidivism, though, is new offenses, right? Well, not necessarily. I mean, by definition, right? Recidivism is committing a new offense. Committing new offenses or disregarding court orders, the point is. Well, I mean, I think part of the challenge, and I don't want to distract you from answering Judge Miriam's question, is the idea of, or at least suggest that a violation of the conditions is also indicia of recidivism. And I'm not sure if that's the argument you're trying to make, but I'm wondering if that is part of the reason I, at least, am concerned about the narrow tailoring. So please respond to Judge Miriam, but have that in the back of your head, that I thought that's what you were getting at. And if that is, in fact, what you were saying in part of your argument, at least telling us that so we know where that fits. I'm happy to unlink those concepts. Sure. This Court has routinely concluded that a concern about recidivism, as Your Honor is focusing on new criminal conduct, can be sufficient to impose an electronic search condition. Separate from that is the question of whether or not a search condition can be triggered by reasonable suspicion of violations of the terms of supervised release. And that is equally appropriate where there is concern based on the defendant's track record that he may not do well on supervision, such that the probation office needs to have that reasonable authority on reasonable suspicion only and to be conducted in a reasonable manner only. And the reasonable manner language does a lot of work there, Your Honor, because it could relate to where and how and at what level of detail such a search is conducted. And so it provides a meaningful backstop on that front. The 11th Circuit, in a case called the United States v. Taylor, has squarely held by way of example that even where there is no relation to the offense conduct in this case, a history of recidivism can be sufficient to justify an electronic search condition precisely for the reasons Judge Coates stated, which is that if a defendant is going to return to engaging in purchasing drugs or guns, we all know based on the current state of the world, the evidence of that is going to be in his electronic devices. And it's reasonably related to one of the permissible 3553A factors, namely the need to protect the public and in addition, the need to deter recidivism. If I can just very briefly address the other conditions, the mental health condition, I think, is quite straightforward. The concerns identified by this court in the first case were removed by Judge Coates. It is now in- Can you specifically speak to the- and I don't want you to be overly stressed. As you know, we will keep you as long as it's helpful for us. Like, we're going to get through everything that we need to get through. So if I can feel you rushing, I'd rather a fulsome answer on some of the things we need questions to. So is this condition narrowly tailored? We also have the separately mandated substance use treatment already has a mental health component? Yes, Your Honor. The district judge reasonably determined that he needed substance abuse treatment and mental health counseling. And frankly, that's not an uncommon determination based on the individual facts of the case. Here, the record was replete with information suggesting that Mr. Jimenez would benefit or was in need of mental health support and mental health treatment. And this court's job on appellate review is to determine, as a matter of substantive reasonableness under the highly deferential abuse of discretion standard, whether Judge Coates unreasonably made this determination. And in paragraph 73 of the pre-sentence report, Jimenez said that he had found therapy helpful on page 16 of his sentencing submission. But isn't the question here specifically the CBT aspect? That was what was pulled on by the prior panel, right? No, Your Honor, I'm sorry. The condition was changed by Judge Coates on remand. There is no CBT requirement. Here, there's language that says, to the extent practical and as determined to be appropriate by the therapy provider, it shall include cognitive behavioral therapy techniques. And that substantially is different from the prior language, which was Right, it's changed the nature of it, but is that appropriate? Well, no, Your Honor. It's different because that language is actually just a suggestion now, because it's in the discretion of the treatment provider. If that sort of parenthetical language is taken out of the condition, and it just says, you must participate in an outpatient mental health counseling program approved by the US Probation Office, which program shall include regular therapy sessions, that is the, and again, the standard form of language that is used. Right, my point, again, I didn't phrase that well. The remand was based solely on the CBT aspect. That's right, Your Honor. I'm sorry, I misunderstood. I misstated it. That wasn't on you. That's right. The remand on mental health was based on the unique condition Judge Coates had written in the first case, and she replaced it with a standard form mental health condition. With respect to the employment and community service obligations, again, Jimenez makes arguments sort of in a vacuum from first principles, but ignoring the fact that this court has, on multiple occasions, affirmed a determination that an individual, based on their record and their personal characteristics, needs to be fully occupied. And so I understand there to be a bit more. So we've got a bunch of different pieces, right? Is there the justification for it? And the question is whether or not they need to be occupied, whether or not idleness is important, the like. Can you talk about the question of improper delegation and ripeness and the other things that are swimming around this question? Certainly, Your Honor. So I'll start first with ripeness. The Villafane Lozado case discussed in the appellant's reply brief explains that ripeness is really an argument-by-argument assessment. And insofar as the argument here is that the structure of the condition is an improper delegation in the first instance or is unjustified, we acknowledge that that's right because it's a legal question presented by the imposition of the condition. But our real understanding of the, or at least one of the core arguments here, is that it's excessive because it imposes thousands of hours of community service. That argument is not right. And this Court has squarely held that in the Morrishow case, 2024 Westlaw 4690524, where the entire purpose of the ripeness doctrine is to not make academic determinations. So tell me how this would work, then. If they wanted to challenge the community service, then we'd have to wait until he was performing it? Is that right? No, Your Honor. Purely with respect to the argument that the number of hours exceeds an established maximum, and it's not actually an established maximum. It's a guidelines recommendation that a district court is free to go above if it sufficiently justifies itself. But in the Buchanan case and the Cattull case, this Court has affirmed this type of structure, which is you either have to work or be in education, or if you are otherwise idle, if you're not excused from full-time activity, you have to be performing community service. And so a finding of improper delegation here, there is no delegation to the probation officer because it's not actually, the way the condition is written does not excuse the defendant from community service if he's making good faith efforts to find employment. The condition says you must seek and maintain full-time employment of at least 30 hours per week if you are not employed or excused from employment. An excuse from employment is a term that falls under Standard Condition 7 and sort of encapsulates the routine supervisory administrative authority of probation officers. And so if he is unemployed and not excused from employment and is looking for a job, he has to perform community service. There's no discretion vested in the probation officer about whether he has to perform community service or not. This is a reasonable condition that's structured to piggyback on the full-time employment obligation under Standard Condition 7. And as I said, in Buchanan and Katul, this court has affirmed this structure and this justification. With respect to the justification, the record is clear that Judge Coate reasonably determines that Mr. Jimenez is an individual who will be best kept out of trouble and best rehabilitated by full-time positive engagement. In his sentencing submission, he said that he did well. This is at pages 4, 4 and 5, and 6 of his sentencing submission. He said that he did well after his first release from prison because he was employed. And he reverted to drug use and illegal conduct after he was terminated. After his 2006 release. That should be financial, though, too, right? I mean, you can be busy at community service, but it doesn't feed your family and pay the rent, which could. It doesn't undermine all of the reasons that people go back to criminal activity, right? But I don't think it has to, Your Honor. It just has to be that Judge Coate did not abuse her discretion on substantive reasonableness review in making this determination in this case. Did she honor the remand order, which says, because the district court failed to articulate any justification for the community service condition or delineate the outer bounds for the number of hours because it's not self-evident we remand? It felt to me like that was requiring her to delineate the outer bounds for the number of hours. I don't think it is, Your Honor. And certainly, there was no argument that the circuit mandate required that. Because there is her articulation by imposing the same condition was, I intend there to be no outer boundary on the number of hours. That's inherent in what she did. And this Court has affirmed that because it's conditional. It's the number of hours. By the way, the guidelines commentary makes clear that the primary motivator there is the administrability of it. And Judge Coate determined that it was more important here to ensure that Jimenez was fully occupied, notwithstanding the administrative burden. That's the argument that's not right. If he reaches a number of hours of community service, which may or may not, and hopefully will not, happen, he can apply to Judge Coate at that time to remove the condition on the grounds that it's unreasonably burdensome based on how much he's had to do. And if she denies that application, he can take an appeal. But he won't have the right to counsel at that point? Certainly he will. What I think Would he move to modify the conditions of release? He has the right? That's good to hear. Well, I don't know statutorily whether he has the right. But if he were to ask Judge Coate to reappoint the federal defender, first of all, as a practical matter, I am reasonably confident that the federal defenders are going to continue to advise Mr. Jimenez. But if he were to ask for the appointment of counsel to challenge the ongoing nature of his special conditions, I would expect, and we see this all the time, that counsel gets appointed for that purpose, unless it is patently frivolous, and this would not be. It's the entire purpose of this Court's rightness doctrine in this context as articulated in the Morrishow case. The last thing I'll say briefly. I think we're OK. I think we've got the argument. Unless the Court has questions on the scope of the mandate. OK. Questions. I think we're good. Thank you so much. Thank you. And Ms. Bumgarl, you'll similarly get the time that we need to answer the questions that we need. I guess I'll start where my friend ended. And I appreciate he's made my point that the community service obligation is vague. I believe I heard him say that if Mr. Jimenez is looking for work, he's still obligated to do community service because he's not employed. If you look at A136, which is the site for the resentencing, the judge says, if you're engaged in job searches, she talks about what the probation department will do to help him find employment. If you're engaged in job searches, so long as he's engaging in that in good faith, then there will come a time when the probation department will make a judgment. And so the court sentencing appeared to indicate that as long as he's engaging in a job search in good faith, he couldn't be subject to community service, that we hear that the government reads the condition differently. And I think that just emphasizes the amount of discretion that the condition, as structured, delegates to the probation department. The government said that the only basis for vacating these conditions was the lack of justification or rationale. And that was certainly the primary basis. But as Judge Merriam pointed out, this court in the prior remand order also identified issues with the conditions, like not delineating the outer bounds of the community service, and also the vagueness of the CBT condition. And those weren't meaningfully addressed by the court on remand. Just very quickly on the electronic search, this court has been quite careful to limit electronic search conditions to situations where it's tied to something specific in the offense of conviction or the defendant's criminal history. And it's important not to lose sight of the fact that this is an exception to the warrant requirement. And so if there ever comes a time when there is probable cause to think that a person has, in fact, committed a new crime, obviously law enforcement can seek a warrant for that individual. But in cases such as United States v. Griffin, United States v. Frank, in United States v. Morrishow, the court vacated an electronic search condition, just like the one here, and in United States v. Meadows. And so there are many cases where the offense of conviction is a violent offense or a gun offense where it's essentially a street crime. And this court has said that that doesn't provide the individualized basis that's necessary to impose this sort of search condition. I smiled when my friend mentioned it wouldn't be appropriate in something like an assault on a postal worker because one of my colleagues was just arguing a case where the government got a search of a self-award to search an individual's cell phone following an assault on a postal worker. And so the government takes the position that even a case like that should be a basis to search someone's cell phone. I just want to, the government said with respect to the CBT condition that the record was replete with evidence suggesting that he needed mental health treatment, but that's not what this court found on the prior appeal. The government's argue on the prior appeal was that, even though Judge Code hadn't justified the condition, the basis for it was self-evident from the record. And this court rejected that, specifically finding that there was no basis in the record to impose that sort of treatment condition. And obviously, we want Mr. Jimenez to do well on supervised release to get the treatment that he needs and to have the support that he needs. But my goal as his representative is not to set him up to fail. And so we're concerned and objecting to an abundance of additional conditions that we think might, rather than supporting and furthering his rehabilitation, inhibit it by giving him more obligations than he can comply with. And so that's the reason for the objection. Thank you. This was very, very helpfully argued. Thank you so much.